IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTINE SECILIA<br>310 Wilbur Street<br>Pittsburgh, PA 15210<br><br>    Plaintiff,<br><br>    v.<br><br>MOUNT OLIVER BOROUGH<br>150 Brownsville Road<br>Mount Oliver, PA 15210 and<br><br>CHIEF FRANK MOSESSO<br>c/o Mount Oliver Borough<br>150 Brownsville Road<br>Mount Oliver, PA 15210<br><br>    Defendants. | CIVIL ACTION<br><br>No. _____<br><br>JURY TRIAL DEMANDED |

## CIVIL ACTION COMPLAINT

The above-named Plaintiff, by and through her undersigned counsel, hereby avers as follows:

### I.  Introduction

1. Plaintiff has initiated this action to seek redress unlawful sexual harassment and discrimination in violation of Title VII of the Civil Rights Act of 1964, 28 U.S.C § 1983, and other applicable law.

### II.  Parties

2. The allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

3. Plaintiff Christine Lynn Secilia (hereinafter "Plaintiff") is an adult individual currently residing at the above address.

4. Defendant Mount Oliver Borough ("Defendant Borough") is a municipality located in the Commonwealth of Pennsylvania.

5. At all times relevant hereto, Defendant Borough acted by and through its agents, servants, and employees, each of whom acted within the scope of his or her job duties.

6. Defendant Borough is an "employer" within the meaning of Title VII of the Civil Rights Act because it is engaged in an industry affecting interstate commerce and because it maintained or maintains fifteen (15) or more employees for each working day in each of twenty (20) or more weeks in the current or preceding calendar year.

7. Defendant Chief Frank Mosesso ("Defendant Mosesso") currently services as the Chief of Police for Mount Oliver Borough and maintains a business address as captioned above.

8. Defendant Mosesso acted under color of state law at all times relevant herein.

### III. Jurisdiction and Venue

9. The allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

10. The Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

11. The United States District Court for the Western District of Pennsylvania may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of civil rights.

12. The Court may also maintain supplemental jurisdiction over state law claims set forth herein (or later added) pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of

Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

13. The Court may maintain supplemental jurisdiction over Plaintiff's state law claims against Defendant Mosesso pursuant to 28 U.S.C. § 1367(a) because: (i) its original jurisdiction in the instant case is based upon 28 U.S.C. § 1331 as opposed to 28 U.S.C. § 1332; (ii) the claims against Defendant Mosesso are sufficiently related to the claim(s) within the Court's original jurisdiction that they form part of the same case or controversy; (iii) the claims against Defendant Mosesso do not involve novel or complex issues of state law; (iii) the claims against Defendant Mosesso do not predominate over the claims over which the Court has original jurisdiction; and (iv) there is no other compelling reason to decline jurisdiction over the claims against Defendant Mosesso.

14. Venue is properly laid in the Western District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Defendants are located in and conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

15. Plaintiff was employed in the Western District of Pennsylvania at the time of the unlawful actions set forth herein.

### IV. **Procedural and Administrative Remedies**

16. The allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

17. Plaintiff has satisfied the procedural and administrative requirements for proceeding under Title VII of the Civil Rights Act of 1964 as follows:

   a. On or about January 10th, 2012, Plaintiff filed a timely written charge of discrimination (No. 530-2112-01343) with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission;

    b. The Equal Employment Opportunity Commission issued a Notice of Right to Sue on the foregoing charge on or about November 13th, 2012;

    c. The instant action is timely because it has been initiated on February 11, 2013 – within ninety (90) days of the receipt of the aforementioned Notice;

    d. Plaintiff has exhausted her federal and state administrative remedies with respect to the allegations of this Complaint.

## V.  Factual Background

18.    The allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

19.    Plaintiff is female.

20.    Plaintiff was employed by Defendant Borough's police department as a police officer from August of 2003 to December 20, 2011, when she was unlawfully discharged from her employment.

21.    Plaintiff's discharge was unusual in that she had written a draft resignation letter because of the intense sexual harassment and retaliation she suffered at the hands of Defendant Mosesso, but never handed the letter in to Defendant Borough.

22.    The letter remained in Plaintiff's locker, unused, until Defendant Mosesso broke into the locker in October of 2011 and took the letter without Plaintiff's knowledge or permission.

23.    Because Plaintiff had refused to succumb to sexual harassment and solicitations at the hands of Defendant Mosesso, he advised her that her "resignation" was accepted in December of 2011.

24.    In reality, Plaintiff never resigned from her position.

25.    Throughout her employment, Plaintiff was regularly subjected to ongoing sexual harassment by Defendant Mosesso, who was her supervisor.

26. At Defendant Borough's Christmas party in 2008-2009, Defendant Mosesso announced how much he "loved" Plaintiff, physically assaulted the man she brought as a date, and had to be physically restrained and driven home.

27. During her employment, Defendant Mosesso continuously called Plaintiff for personal reasons, placing strain on her personal relationship with him, and attempted to induce her to begin a sexual relationship with him.

28. When Plaintiff refused to enter into a relationship with Defendant Mosesso, he deliberately altered her work schedule to inconvenience her because he knew she was in a relationship with someone who worked on the same shift she did.

29. From 2003 to the end of her employment, Defendant Mosesso required Plaintiff to be his partner during the same shifts and pass days and continuously forced her to ride in his vehicle despite the fact that she had always asked to ride in her own vehicle because of his ongoing sexual harassment.

30. From 2009 to 2011, Plaintiff complained to members of Defendant Borough's Council about being in the same vehicle with Defendant Mosesso.

31. In March of 2011, Plaintiff was cornered by Defendant Mosesso at her son's birthday party and advised by him that he could not believe that she had "did this to him" and that he was leaving.

32. In April of 2011, Plaintiff took a vacation to go to Las Vegas with her significant other, and Defendant Mosesso was extremely upset and jealous and made several inappropriate and pejorative remarks about her significant other, and Plaintiff, while both were in the police station.

33. The aforesaid argument was so severe that when Plaintiff attempted to leave the station, Defendant Mosesso blocked her from leaving and forced her to remain and

5

listen to him yelling at her. When Plaintiff attempted to go into the bathroom to escape, Defendant Mosesso pushed the door open and physically knocked her into the lockers.

34. On or about Easter of 2011 Defendant Mosesso came to Plaintiff's home uninvited while her family was present.

35. During May and June of 2011, Plaintiff continued to request Defendant Mosesso to allow her to take her own vehicle and supervise her shift. Plaintiff then requested, in June of 2011 that Defendant Mosesso put her on the night shift (11 p.m. to 7 p.m.) but her requests went ignored.

36. In the spring of 2011, Defendant Mosesso was also upset that Plaintiff did not go out with him for his birthday and repeatedly prevented her from leaving his patrol vehicle by holding his finger on the lock button and speeding up when she attempted to exit.

37. On several occasions, Defendant Mosesso also attempted to grab Plaintiff's cellular phone out of her hand to see who she was texting.

38. In or about August of 2011, Plaintiff, Corporal Besselman and Sargeant Juzwick, her supervisors, were making a traffic stop and doing a drug bust using their cell phones to communicate, but Corporal Besselman and Sargeant Juzwick failed to communicate with Plaintiff about what was going on.

39. Plaintiff informed Corporal Besselman Besselman that his actions and that of Sergeant Juzwick were unsafe (in a conversation that took place in front of Defendant Mosesso) and Corporal Besselman agreed and apologized.

40. However, after this point, Sergeant Juzwick and Corporal Besselman started relieving Plaintiff later and later, and refused to speak to her at all.

41. On information and belief, Defendant Mosesso instructed the aforesaid officers to ignore Plaintiff. Indeed, one officer, Officer Bill

6

Griser, told Plaintiff numerous times that Sargeant Juzwick and Corporal Besselman were "messing with" her.

42. In November of 2011, Defendant Mosesso demoted Plaintiff to 3rd Sergeant and Sergeant Williams (who was formerly 3rd Sergeant) was put in charge above Plaintiff.

43. In October of 2011, Defendant Mosesso also threatened to change the work schedule, which would deliberately interfere with Plaintiff's school classes, since she had returned to school in August of 2011 to work on her Master's Degree. Defendant Mosesso refused to change Plaintiff's work days when asked. Plaintiff was deliberately singled out for this harassment and retaliation.

44. At this time, Plaintiff prepared her draft resignation letter and placed it into her locker and forgot about it, although Defendant Mosesso was aware of the letter and its location.

45. At one point, Plaintiff had texted Defendant Mosesso and told him that she had written a draft resignation letter, but texted him the next day and advised him she was not leaving.

46. In October and November of 2011, without explanation, Defendant Mosesso took all Plaintiff's additional duties away from her, changed all the locks in the department, changed all the passwords for the computers, and deleted a number of documents on the computer under Plaintiff's profile.

47. When Plaintiff asked Defendant Mosesso for an explanation for the foregoing conduct, he responded that he knew what she had been up to all summer (meaning her relationship with her significant other) and stated that everything in the department was going to change.

48. On December 20, 2011, Plaintiff went to get the mail from the back offices and Joanne Malloy, the secretary, told her she was sorry to hear that things in the department had gotten so bad.

49. Plaintiff asked Malloy what she had heard, and Malloy told her that the council had "accepted her resignation letter" at last night's meeting.

50. Plaintiff was shocked to hear this, and asked what letter Malloy was talking about.

51. Malloy responded that Defendant Mosesso had given the Council a letter and that she did not have a copy.

52. Plaintiff subsequently texted Defendant Mosesso to complain that he had broken into her locker, stolen her draft letter, and had improperly submitted the letter to Defendant Borough's Council.

53. Plaintiff then contacted James Cassidy, Defendant Borough's Mayor, and informed him that the letter was never authorized by her and that she not resigning. Cassidy advised her that he would call her back after he spoke to Council.

54. Plaintiff also contacted George Farneth, Defendant Borough's Public Safety Chair, but he did not call her back and instead had Jim Perch, Defendant Borough's Solicitor, call her. Plaintiff explained the situation with the letter and Perch advised her that he could not help her.

55. Plaintiff also spoke to Pat Malloy, Defendant Borough's Council President, who stated that he could not help her either and that she "had to do what I had to do."

56. Approximately an hour later, a large yellow envelope appeared in Plaintiff's mailbox with a letter from Defendant Mosesso and a copy of the "resignation letter" she had never submitted and that he had taken and submitted without her knowledge.

**Count I**
**Title VII –Gender Discrimination**
**Plaintiff v. Defendant Borough**

57. The allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

58. The foregoing conduct by Defendant Borough, in permitting Defendant Mosesso to sexually harass and retaliate against Plaintiff despite her complaints, and in failing to rescind a "resignation" Plaintiff immediately advised Defendant Borough's agents was falsely engineered by Defendant Mosesso without her knowledge, despite notice of this fact, constituted ongoing and continuous discrimination against Plaintiff on the basis of her gender (female).

59. As a result of Defendant Borough's unlawful discrimination as set forth *supra,* Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the *Ad Damnum* Clause of this Complaint, *infra.*

**Count II**
**Pennsylvania Human Relations Act**
**Plaintiff v. Defendant Borough**

60. The allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

61. The foregoing actions of Defendant Borough also constitute unlawful discrimination in violation of the Pennsylvania Human Relations Act, 43 Pa.C.S.A. § 951, *et seq.*

62. As a result of Defendant Borough's unlawful conduct, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the *Ad Damnum* clause of this Complaint, *infra.*

## Count III
### Pennsylvania Human Relations Act
### Aiding and Abetting Discrimination
### Plaintiff v. Defendant Mosesso

63. The allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

64. The actions of Defendant Mosesso as aforesaid constituted the aiding, abetting, inciting, compelling or coercing the doing of acts considered to be discriminatory.

65. The actions of Defendant Mosesso as aforesaid caused Plaintiff to suffer loss of earnings and earning power, emotional distress, pain and suffering, loss of self-esteem, and other damages as set forth herein.

66. The actions of Defendant Mosesso as aforesaid violated the Pennsylvania Human Relations Act, 43 Pa.C.S.A. § 959 *et. seq.*

## Count III
### 42 U.S.C. § 1983
### Plaintiff v. Defendant Mosesso

67. The allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

68. In engaging in a pattern of unwanted sexual harassment against Plaintiff, and by knowingly engaging in a pervasive and ongoing pattern of sexually-based harassment, discrimination, and retaliation against Plaintiff as aforesaid, Defendant Mosesso violated Plaintiff's right to equal protection under the Fourteenth Amendment to the United States Constitution.

69. In stealing Plaintiff's resignation letter from her locker and submitting it to Defendant Borough's Council, Defendant Mosesso used his government position to infringe upon Plaintiff's property rights in the letter, and in her public employment, in violation of the Fifth and

Fourteenth Amendments to the United States Constitution, and knowingly caused her employment to be terminated under false pretenses and without due process.

70. As a result of Defendant Mosesso's Constitutional violations as aforesaid, Plaintiff has sustained damages.

### *Ad Damnum Clause/Prayer for Relief*

**WHEREFORE**, Plaintiff prays that the Court enter judgment in her favor and against Defendants and that it enter an Order as follows:

a. Defendants are to be permanently enjoined from permitting sexual harassment or gender discrimination against Plaintiff;

b. Defendants are to be prohibited from continuing to maintain their unlawful policy, practice, or custom of permitting sexual harassment and gender discrimination in the workplace, and are to be ordered to promulgate an effective policy against such harassment and discrimination and to adhere thereto;

c. Defendants are to be permanently enjoined from retaliating against Plaintiff for exercising her rights under federal and/or state law;

d. Defendants are to compensate Plaintiff, reimburse Plaintiff, and to make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' unlawful actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority.

e. Plaintiff should be accorded all benefits illegally withheld from the date she first suffered harassment and discrimination at the hands of Defendants until the date of verdict;

f. Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused to her by Defendants' actions;

g. Plaintiff is to be awarded punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious, and outrageous conduct, and to deter Defendants and other employers from engaging in such misconduct in the future;

h. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate;

i. Plaintiff is to be awarded the costs and expenses of this action;

j. Plaintiff is to be awarded reasonable legal fees as provided by applicable federal and state law;

k. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law and to reflect the tax consequences thereof;

l. Plaintiff is to be granted such additional injunctive or other relief as she may request during the pendency of this action in an effort to ensure Defendants do not engage or cease engaging in unlawful retaliation against Plaintiff or other witnesses to this action;

m. The Court is to maintain jurisdiction of this action after verdict to ensure compliance with its Orders therein;

n. Plaintiff's claims against Defendants are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the

caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

          Respectfully submitted,

          TIMOTHY M. KOLMAN AND ASSOCIATES

By: /s/ Timothy M. Kolman, Esquire
     Timothy M. Kolman, Esquire
     Wayne A. Ely, Esquire
     Attorneys for Plaintiff
     414 Hulmeville Avenue
     Penndel, PA  19047
     (215) 750-3134

February 11, 2013