IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTINE SECILIA, ) | |
| ) | |
| Plaintiff, ) | 2:13-cv-00223 |
| ) | |
| v. ) | Judge Mark R. Hornak |
| ) | |
| MOUNT OLIVER BOROUGH ET AL, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

The Plaintiff's employment with the Mt. Oliver (PA) Borough Police Department ended in December, 2011 when the Borough Council accepted her resignation as a police officer. The problem, she says, is that she never intended to resign, did not resign, and did not submit a letter of resignation. ECF No. 1 at ¶ 24.

The Council voted to accept her resignation, based on a letter that Defendant Frank Mosesso, the Borough's Chief of Police and the Plaintiff's former lover, says was found on his office desk by a couple of other Borough Police officers. The Plaintiff admits that over time, she drafted a few versions of different letters and signed some of them, but each time got cold feet and never submitted them, instead leaving them in her locked Police Department locker. She says that she has no idea how any such letter left her locker and got into the hands of the Chief, and also says that she knew nothing about Council's action on "her" letter until after it acted and ended her employment. ECF No. 1 at ¶¶ 21-24. When she learned of that action, she testified that she was literally "floored." SD at 157-179.[1]

---

[1] Plaintiff's deposition is filed as an Exhibit at ECF No. 71. It is referenced herein as "SD," for Secilia Deposition.

Plaintiff centrally pleads that her employment ended in a way that was contrary to Title VII of the Civil Rights Act of 1964 in that the terms and conditions of her employment ended based on her sex. More specifically, she asserts that the Chief concocted the whole letter of resignation maneuver as his pay back for her ending the romantic relationship he and she had, her not renewing it, and in light of the ones that she had begun with others.

All of this was explored in great depth during discovery, and after that period of the pretrial process ended, the Borough and the Chief filed for summary judgment, asserting that no trial was necessary because all of the evidence, considered in the light most favorable to the Plaintiff, nonetheless cut only one way - theirs.

The Court held oral argument on the Motions for Summary Judgment, and at its conclusion denied the Motions in most regards, holding on the record that there were multiple genuine issues of material fact about, among other things, whether the Plaintiff intended to or even did resign, and whether a rational trier of fact, properly instructed, could conclude that the Plaintiff's sex was a substantial motivating factor in her employment ending. More specifically, relying on the Supreme Court's decision in *Meritor Savings Bank FSB v. Vinson,* 477 U.S. 57 (1986) and its progeny, this Court held that a jury could find that the Plaintiff's terms and conditions of employment were altered due to her refusal to continue or resume the romantic relationship she had shared for several years with the Chief, SD at 39, that he was more than a bit bothered by that, SD at 40, 74-76, 90, and it only rubbed salt in the wound when the Plaintiff continued similar relationships with others. SD at 91. In short, Plaintiff both pleads and contends in her testimony that she lost her job because of her sex, and specifically that she was subjected to terms and conditions of employment dependent on her sex (including a hostile work

2

environment),[2] and that there are facts in the record which if believed will back that up. 477 U.S. at 65-68.

The Borough and its lawyers are persistent. They now ask the Court to reconsider its summary judgment decision on the basis that "jealousy" based discrimination is not actionable under Title VII. They say that the Plaintiff's case based on her discovery responses, and the Court's reasoning, suffer from the same fatal weakness. That is, under Title VII, it is not against the law for a male employer to fire a female employee because the decider is jealous of a relationship that the plaintiff/dismissed employee has with another person, and since at worst, that is what was happening here, they have a winner as a matter of law. *See Falconer v. Papco,, Inc.*, 2008 WL 2486128 (W.D. Pa. June 17, 2008)

The Borough's Motion for Reconsideration, which is joined in by the Chief, will be denied for several reasons. First, such Motions are disfavored, and only work when there is a change in the law, there are new facts not previously considered, or there is a manifest error in the Court's first decision. *Trunzo v. CitiMortg. et al*, 876 F.Supp.2d 521, 544 (W.D. Pa. 2012). Factors #1 and #2 are not in play here. There is no new legal rule at issue, and no new facts.

Neither is factor #3 implicated for one big reason. It is true that the Plaintiff did testify that the Chief was quite jealous of her affections being directed toward others, and the Court did note that in its questioning of counsel and in denying summary judgment. What the Borough and Chief leave out is both the larger testimonial context of the Chief's jealousy and his concrete

---

[2] For instance, Plaintiff testified that the Chief would repeatedly swipe his hand across her buttocks, and would comment on the imprints left by her breasts on her bulletproof vest. SD at 143-145.

3

action related to it and, according to the Plaintiff, what the Chief did was give the Plaintiff an ultimatum – either restart their romantic relationship, or he would never speak with her again.[3]

The first part of that formulation is, if true, the Chief conditioning an essential part of the Plaintiff's continued employment on her re-enlisting in an affair with him. They had to be romantic partners or have no relationship at all. SD at 100-109. It borders on the absurd for Defendants to argue that this statement, from the Police Chief to an Officer, would not be altering the terms and conditions of Plaintiff's employment based on her having a sexual relationship with him. Plaintiff specifically testified that "at times" the Chief wanted to have sex with her after their own relationship had ended. SD at 100. If true, this ultimatum is classic *quid pro quo* sexual harassment,[4] which makes out a Title VII sex discrimination claim.

Piled on to this is the entire discovery record replete with testimony which if believed, not only bolsters a *quid pro quo* claim, but also lays out conduct by Chief Mosesso that would also constitute hallmark examples of a hostile work environment for Title VII purposes, spanning Plaintiff's employment and continuing until the very end. This includes, among other things, a fist fight/wrestling match between the Chief and Plaintiff's then-boyfriend at a Christmas party, ECF No. 1 at ¶ 26, SD at 75, the Chief supposedly trapping the Plaintiff into a corner behind a pool table in her own basement when she rebuffed his relationship renewal efforts, ECF No. 1 at ¶ 31, SD at 83-85, and the Chief going to the Plaintiff's house for Easter dinner and expressing the unrequited nature of his affections to the Plaintiff's father. ECF No. 1 at ¶ 34, SD at 108.

---

[3] Plaintiff testified that after she refused to restart their affair and was openly seeing someone else, the Chief's behavior hindered her ability to do her job. SD at 88.

[4] Defendants contend that in the end, the Chief never expressly asked for "sex," only for a resumption of the relationship between him and the Plaintiff. ECF No. 65 at 8. Of course, their prior relationship had included sex, so it would be a plausible inference that that was exactly what the Chief wanted, and the Plaintiff testified to as much. That "sex" was not mentioned as such in the final "ultimatum" conversation does not obviate the obvious. It is also worth noting that the *Falconer* case included *quid pro quo* allegations which the Court did not reach due to a procedural default as to such claims.

4

According to the Plaintiff, Chief Mosesso allegedly pushed her into a locker at the police station while enraged over his lack of a relationship with Plaintiff and because of the one she had with someone else. SD at 96. He also allegedly locked her in a patrol car with him for the same reasons. SD at 100-102. This is on the heels of what all parties seem to concede was a multi-year, pretty much "out in the open" romantic relationship between the Plaintiff and the Chief that had come to an end. *See* ECF No. 1 at ¶¶ 26-36; SD at 11, 267.[5]

The big problem with the Borough's reconsideration Motion is that it considers only the discovery evidence that it likes, and downplays or ignores the balance of the testimonial record. While there is plenty of record evidence from which a jury could conclude that Chief Mosesso surely was jealous of the Plaintiff's romances with others, paired with it is as much (if not more) evidence of the Chief's persistent efforts to rekindle his romantic relationship with the Plaintiff, amplified with serial aggressive acts, outbursts of anger, physical confinement of the Plaintiff, actions directly affecting the Plaintiff on the job as a police officer, and ongoing, multi-faceted expressions of his unrequited physical attraction and emotional affinity for the Plaintiff.

The Borough and the Chief may be correct that they will have a winner at trial, and a jury will conclude either that most if not all of the Plaintiff's factual assertions don't hold water, or that there was nothing at all unwelcome about how the Chief wanted to combine his love life with that of the Plaintiff and their police work. If so, then the jury could come in with a defense verdict.[6]

---

[5] Plaintiff claims that several months *after* her Mt. Oliver job ended, Chief Mosesso sent her a text message stating "I love you Babe." SD at 210. This would appear to strongly suggest that the Chief's desires went beyond striking up a conversation with the Plaintiff, and that the condition of his ultimatum was more than just not speaking with the Plaintiff.

[6] Unlike *Falconer* and the "jealousy" cases cited by Defendants, the Plaintiff's testimony, if accepted by a jury, demonstrates that this case goes way beyond the Plaintiff being allegedly forced out because she dated someone other than the Chief. Here, unlike *Falconer*, the Plaintiff and the Chief had a prior sexual relationship, it ended, and according to the Plaintiff, the Chief aggressively sought to restart it. He allegedly treated her unlike other Police

5

On the other hand, there is substantial record evidence from which a jury could conclude that the Chief and the Plaintiff had a thriving love affair while protecting and serving the public in Mt. Oliver, that the Plaintiff elected to bring it to an end, and thereafter, the Chief could not get over it and chose to bring the Plaintiff's Mt. Oliver Police career to an end with a resignation letter that the Plaintiff never intended be submitted to anyone, let alone Borough Council. A permissible inference from the record, including the Plaintiff's deposition testimony, is that the operative events occurred because Chief Mosesso wanted to have sex with the Plaintiff, because the Plaintiff was a woman, and because she did not to proceed as Chief Mosesso's words and actions suggested, if not demanded. *See* ECF No. 65-1 at 12-13.

Which version is true is the stuff that genuine issues of material fact and jury trials are made of, and the denial of summary judgment was mandated by the controlling substantive law and the factual record developed by the parties in discovery. Now, it is for a jury to sort out what happened, and why, in the affairs of Mt. Oliver Borough.

The Motion for Reconsideration is denied.

_____
Mark R. Hornak
United States District Judge

Dated: July 25, 2014

cc: All counsel of record

---

employees because she would not do that, and engaged in serial acts of hostility related to the workplace that emanated from her refusal to rekindle the flame. Further, given the timing involved, as to the Plaintiff's theory regarding the "submission" of the resignation letter, a jury could infer that her refusal to resume the romantic relationship was a substantial motivating factor in the Chief's allegedly engineering the submission of the letter. This case is simply not *Falconer*.